**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 7 2021

JAMES W. McCORMACK, CLERK

By: _____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**STACEY DANIEL**                                                                 **PLAINTIFF**

**V.**                                        **CASE NO.** ___4:21-CV-269-KGB___

**ABM INDUSTRIES INCORPORATED**                              **DEFENDANT**

**VERIFIED COMPLAINT**

COMES NOW, Plaintiff Stacey Daniel ("Plaintiff") by and through her undersigned

counsel, and files this Verified Complaint against Defendant ABM Industries Incorporated

("Defendant") and will show as follows:

**PARTIES**

1.      Plaintiff Stacey Daniel is a citizen of Lamar, Johnson County, Arkansas.

2.      Plaintiff is a former employee of the Defendant.

3.      Upon information and belief, ABM Industries, Incorporated is a foreign

corporation with its principal place of business at One Liberty Plaza, 7th Floor, New York, NY

10006.

4.      According to the Arkansas Secretary of State website, ABM Industries,

Incorporated has a principal address of 14141 Southwest Freeway, Suite 477, Sugar Land, Texas

77478.

5.      At all relevant times, Defendant was authorized to, and did conduct business in

Arkansas, including but not limited to maintaining an office at 10220 W. Markham Suite 105,

Little Rock, AR 72205.

This case assigned to District Judge ___Baker___
and to Magistrate Judge ___DEERE___

1

6.     The Defendant maintains an office in Arkansas located at 10220 W. Markham Suite 105, Little Rock, AR 72205.

7.     The Defendant's registered agent for service of process in the State of Arkansas is the CT Corporation System located at 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1332,1343 and 1367 and this action is authorized pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §2000e, *et seq.,* This Court may lawfully exercise jurisdiction over the Defendant.

9.     This Court has supplemental jurisdiction over state law claims because these claims form part of the same case or controversy pursuant to 28 U.S.C. §1367.

10.    The Arkansas Nuclear One Plant is located at 1448 AR-333 Russellville, Pope County, Arkansas 72802, which is in this Court's jurisdiction.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, in that a substantial part of the events or omissions giving rise to this action occurred in this District, specifically in Russellville, Pope County, Arkansas.

12.    The Plaintiff has exhausted all administrative remedies, which is necessary prior to filing a lawsuit under 42 U.S.C §2000e, *et seq.,* and has commenced this lawsuit within all applicable time frames.

## FACTUAL BACKGROUND

13.    Plaintiff incorporates all preceding paragraphs as if set forth herein, word for word.

14.     At all relevant times, the Defendant was a services provider at the Arkansas Nuclear One Plant ("Plant") in Russellville, Arkansas. This Plant is owned by Entergy Arkansas, LLC ("Entergy").

15.     Upon information and belief, the Defendant had a contract, agreement and/or relationship to provide grounds work, fire protection, and janitorial services at the Plant for Entergy at all relevant times herein.

16.     As part of these contracts, agreements and/or relationships between the Defendant and Entergy, the Defendant was required to comply and adhere to various health and safety protocols, instituted by Entergy at the Plant.

17.     The Plaintiff was hired by the Defendant on or about April 2nd, 2019 as a full-time janitorial supervisor and the Plaintiff was promoted to Account Manager of the day shift for the Defendant sometime around September, 2019.

18.     As Account Manager, the Plaintiff was generally responsible for supervising and overseeing employees of the Defendant to ensure they performed their jobs in a safe, effective manner.

19.     As Account Manager, the Plaintiff was permitted to coach and instruct employees of the Defendant whenever those employees violated a policy or procedure of either the Defendant or Entergy.

20.     The Plaintiff's normal shift was from 7:00 A.M. to 3:30 P.M., five (5) days a week, which also required the Plaintiff to be on call at all times.

21.     During the course of the Plaintiff's employment, there were times when the Plaintiff worked over forty (40) hours per week.

22.     The Plaintiff performed her job in a satisfactory manner and never received a

disciplinary notice or unsatisfactory job/performance review.

23.     Prior to August 2020, the Plaintiff never had an internal complaint filed against her by any employee of the Defendant.

24.     On August 20, 2020, the Plaintiff left for vacation in Florida.

25.     On August 20, 2020, Christopher Holland ("Holland") was employed with the Defendant and worked at the Plant with the Plaintiff as a grounds crew supervisor.

26.     At this time, Holland had relatives who were employed by Entergy and who worked at the Plant.

27.     Prior to leaving for  vacation, the Plaintiff received a text from Holland which made fun of employee Rachelle Charles, an employee of the Defendant, after Holland had made Charles cry at the Plant during working hours.

28.     During her trip in Florida, the Plaintiff remained on-call and checked her work email and took work-related phone calls.

29.     While the Plaintiff was on vacation, Holland served in a supervisor capacity in the Plaintiff's absence.

30.     On August 21, 2020, ABM employee Andrea Reinhart reported to Holland that she did not feel good and that she was exhibiting symptoms of fever during her afternoon shift at the Plant.

31.     The Defendant's Code of Business Conduct provides that "Any unsafe working conditions or practices must be reported immediately."

32.     Holland did not report Reinhart's symptoms immediately upon learning of them.

33.     Upon information and belief, Holland told Reinhart to finish her shift on the 21st, even though at this time there were COVID-19 workplace restrictions in effect and that

Holland's order was against protocols in place at that time which mandated that ABM employees who were not feeling well were to be removed from the work site immediately.

34.     Reinhart continued working her day shift at the Plant and left at approximately 5:30 P.M. on August 21, 2020.

35.     Later, on August 21, 2020, Reinhart's condition worsened and she reported having a 101.5 degree fever.

36.     Holland shared Reinhart's confidential medical information with a non-ABM employee on August 21, 2020, which was in violation of Defendant's employment policies and/or applicable HIPAA laws.

37.     Holland then contacted Dan Apple, who, at the time was a site manager for Entergy at the Plant and informed Apple that Reinhart had exhibited COVID symptoms.

38.     Upon hearing this, Apple instructed Holland to contact the COVID call line for Entergy so Reinhart's name would be put in the Covid-19 registry.

39.     Holland provided this information to Apple because Holland was "afraid of [Reinhart's] name coming up through the Entergy database from being tested for Covid at a hospital." *See* Exhibit A Text message.

40.     After finding out that her confidential medical information had been shared, Reinhart contacted the Plaintiff, who was still in Florida and Reinhart expressed her displeasure with having her confidential medical information shared.

41.     As a result of this disclosure, Reinhart filed an internal complaint against Holland for allegedly violating HIPAA laws with ABM's internal human resources department.

42.     Holland was allowed to continue to working on-site at the Plant while the Defendant conducted an internal investigation into Holland sharing private medical information.

43.     The Plaintiff was then contacted by Apple on August 22, 2020, while still on vacation.

44.     Upon information and belief, Apple informed the Plaintiff that Entergy was very upset that Holland did not immediately report Reinhart's presumed illness, especially because employees work in close quarters at the Plant and because  Holland allowed Reinhart to stay onsite for a number of hours after she told Holland she was not feeling good.

45.     Entergy was further upset because of the potential exposure to COVID that Holland allowed at the Plant, since at the time COVID was running rampant through the region and because applicable guidelines at the time required companies to presume positive COVID-19 tests of workers who were not feeling well.

46.     After being contacted by Apple, the Plaintiff communicated with Holland about Holland's failure to report Reinhart's illness over text and via phone conversation, while still on vacation.

47.     On Sunday, August 23, 2020, the Plaintiff had a phone conversation with Holland regarding the sharing of confidential medical information of ABM employees with non-ABM employees and about why it was improper.

48.     During this conversation, the Plaintiff coached Holland about why it is inappropriate to share employee medical information with individuals who are not employed by ABM and discussed the risks posed by allowing Reinhart to remain onsite.

49.     During this conversation, Holland became very upset and angry with the Plaintiff and proceeded to yell at the Plaintiff and eventually hung up on the Plaintiff.

50.     During this phone call, and at all relevant times leading up to this phone call, the Plaintiff was Holland's supervisor and Holland was a subordinate of the Plaintiff.

51.     The Plaintiff has not had any direct contact with Holland after the phone call on August 23, 2020.

52.     Approximately three months prior to the August 23rd incident, the Plaintiff gave Holland a verbal write-up for another violation of ABM policy and Holland signed an acknowledgment upon receipt of this write-up.

53.     Plaintiff was set to return to work from her vacation on Monday, August 31, 2020.

54.     Prior to returning to work, the Plaintiff received a text from Eric Conrad ("Conrad"), a regional operations manager for the Defendant on Sunday, August 30, 2020.

55.     In this text, Conrad asked the Plaintiff if the Plaintiff could meet Conrad at the Hampton Inn lobby located in Russellville, Arkansas to catch up on things before the Plaintiff went in to work her shift.

56.     The Plaintiff agreed and met Conrad before going into the Plant to work her shift on August 31, 2020.

57.     During this meeting, Conrad informed the Plaintiff that Holland had filed an internal complaint against the Plaintiff for harassment and that the Plaintiff would have to be cleared by Entergy before returning to the Plant.

58.     After this meeting, Conrad informed the Plaintiff that Conrad was going to go to the Plant to meet with Lisa Marvin ("Marvin"), who at the time was the Employee Concerns Representative for Entergy at the Plant.

59.     Conrad told the Plaintiff the investigation into the internal complaint filed by Holland would take 2-3 days and then the Plaintiff would be allowed back on site and cleared to return to work.

60.     After being informed of this investigation, the Plaintiff was instructed to work from home.

61.     Upon information and belief, Holland was able to remain working on-site at the Plant while the investigation was ongoing.

62.     On September 2, 2020, the Plaintiff texted Conrad asking about an update on the investigation and when the Plaintiff would be able to return to work to which Conrad stated the investigation was still ongoing.

63.     On September 8, 2020 after the Plaintiff had not been updated on the investigation, she texted Conrad inquiring about the investigation and Conrad replied the investigation was wrapping up and that an update would be provided soon.

64.     On September 14, 2020, neither Conrad, nor any other ABM representative had reached out to the Plaintiff regarding her investigation. On this day the Plaintiff called and texted Conrad but received no response.

65.     On September 16, 2020, the Plaintiff texted Conrad after receiving a text message from Holland, which, upon information and belief, was sent while Holland was on-site and on company time.

66.     On September 16, 2020, the Plaintiff filed a Police Report against Holland for harassment, for spreading rumors at work that the Plaintiff would not be coming back to work and for driving by the Plaintiff's home on multiple occasions. *See* Exhibit B.

67.     As a result of these text messages, the Plaintiff also filed an internal complaint with ABM human resources against Holland on September 16, 2020 for harassment.

68.     After filing this internal complaint against Holland, the Defendant allowed Holland to continue to show up to work, even though an internal complaint had been filed

against him.

69.     Around the time the Plaintiff received these text messages, the Plaintiff heard from ABM employees that Holland was telling them the Plaintiff's mom was sick and the Plaintiff would not be coming back to work with ABM as the Plaintiff had been fired.

70.     At this time, the Plaintiff was unaware of her job status with the Defendant because the Plaintiff had not been provided an update of the pending investigation and was being told she was not yet allowed back to the work-site as the investigation against her was still ongoing.

71.     On September 18, 2020 the Plaintiff received a phone call from an Entergy employee that informed the Plaintiff that the Defendant had the name tag taken off of the Plaintiff's office door at the Plant and that the Plaintiff's personal things had been removed from the Plaintiff's desk.

72.     At the time the Plaintiff was informed of these events, she had yet to receive word on the status of her investigation, as she was still at home and was not allowed back to the work site by the Defendant.

73.     During the investigation, the Plaintiff requested that Holland not be allowed into the Plaintiff's office because he had his own space and because the Plaintiff had employee files and private medical notes in the Plaintiff's office.

74.     However, since the Plaintiff had been instructed to work from home pending the investigation, Holland had spent long hours in the Plaintiff's office with the door closed.

75.     After learning of Holland's actions, the Plaintiff reached out to Lisa Marvin to inquire about the investigation and, upon information and belief, Marvin informed the Plaintiff that Marvin was unaware of any ongoing investigation against the Plaintiff, even after Conrad

said Entergy would have to clear the Plaintiff before she was able to show back up to work.

76.     Upon information and belief, Entergy never suspended the Plaintiff from coming on site at the Plant while the investigation was ongoing.

77.     At about this same time, The Plaintiff was made aware that an ABM grounds crew employee, Dustin Kane had been terminated by ABM after he had filed a claim with ABM human resources after being called a profanity by another ABM employee.

78.     On or about September 21, 2020 the Plaintiff was notified that her work badge had been turned off, but the Plaintiff had yet to hear any results from the investigation that was filed against her from any representative of the Defendant.

79.     The Plaintiff, during the investigation was required to rely on rumors from ABM and Entergy employees about her job status, while Holland, at all times during the investigation was allowed to continue to go to the Plant to work.

80.     As the investigation dragged on, it became apparent that the Plaintiff was not going to have a job with the Defendant.

81.     The Plaintiff was notified by management of the Defendant that her last paycheck would be received on October 12, 2020.

82.      The Plaintiff never received any documentation, or written communication concerning the findings of the investigation opened against her.

83.     The Plaintiff was never notified or given a summary of the Defendant's findings for the internal complaint brought against the Plaintiff by Holland.

84.      Instead, management of the Defendant informed the Plaintiff that it was unlikely that the Plaintiff would be able to return to work and work in the same environment as Holland.

85.     This reason for termination was mere pretext for discrimination based upon

Plaintiff's sex and retaliation for the protected activities the Plaintiff engaged in.

86.     The Plaintiff was never allowed to return to the site after receiving her last paycheck to clear out her personal items from her office at the Plant.

87.     Upon information and belief, if the Defendant wanted to fire and/or terminate an employee at the Plant, who was employed by the Defendant for more than ninety days, the Defendant had to get approval through Defendant's human resources department and approval through Entergy's human resource officer, who at the time of the Plaintiff's dismissal was Angela Kendrick.

88.     Upon information and belief, representatives of the Defendant did not get approval from Entergy's human resources representative prior to terminating the Plaintiff, who had been employed by the Defendant for more than ninety days.

89.     Included items that the Plaintiff was never allowed to retrieve from the worksite included: an instapot, steel-toed Twisted-X shoes, and various pictures and family heirlooms.

90.     Prior to the internal complaint filed by Holland, upon information and belief, the Plaintiff had a clean work record with no disciplinary actions filed against her.

91.     To the contrary, Holland had numerous formal internal complaints filed against him by ABM employees and had been disciplined for violating ABM protocols and procedures in the past.

92.     The Plaintiff was issued a reduction of force letter on October 1, 2020 which stated that her position as Account Manager would be discontinued at the Plant located outside of Russellville, Arkansas.

93.     However, this Account Manager position previously held by the Plaintiff was not discontinued.

94.     Upon information and belief, Charles Tudor ("Tudor") filled in as Account Manager and/or Supervisor for the Plaintiff after the Plaintiff was instructed to work from home and immediately following the Plaintiff's termination of employment from the Defendant.

95.     Upon information and belief, Tudor served in this role temporarily because the Defendant was making arrangements to have Gregory Peltz ("Peltz") relocate from Three Mile Island Nuclear Plant in Middleton, Pennsylvania to serve in the role of Account Manager at the Plant in Russellville due to the planned decommissioning of the Three Mile Island plant.

96.     Upon information and belief, prior to re-locating to work at the Russellville Plant, Peltz worked as Account Manager at the Three Mile Island plant for GCA Services Group, which is a company that ABM previously acquired.

97.     Upon information and belief, Peltz performed and had substantially the same job responsibilities at the Three Mile Island plant as the Plaintiff had at the Russellville Plant.

98.     Upon information and belief, in 2019, the Three Mile Island plant began a series of decommissioning projects, which meant certain employees of the Three Mile Island Plant would be re-assigned and/or out of a job.

99.     Due to the impending closure/decommissioning of the Three Mile Island plant, Peltz was hired/reassigned to the Russellville Plant in approximately October or November of 2020.

100.    Upon information and belief, the Defendant paid for Peltz's moving expenses to relocate his family to Arkansas prior to beginning work at the Russellville plant.

101.    Peltz's current position upon his hire and relocation to work for the Defendant at the Russellville plant was that of Account Manager.

102.    Upon information and belief, Peltz was terminated by the Defendant shortly after

his hire at the Russellville location.

103.    The reason for Peltz's termination was that he could not pass certain certification

tests that were administered by Entergy which were required by certain ABM employees like

Peltz to work in the Plant.

104.    Upon information and belief, the Defendant hired Tammy Warren ("Warren") to

replace Peltz as Account Manager, the position previously held by the Plaintiff.

105.    Upon information and belief, Warren lives and resides with Stephanie

Schumacher ("Schumacher"), who is Holland's sister.

106.    Upon information and belief, shortly after Warren was hired as Account Manager

for the Defendant, Holland was promoted from night shift supervisor to grounds manager for the

Defendant.

107.    This promotion runs afoul of the Defendant's Code of Business Conduct ("Code")

which states in pertinent part that "a conflict of interest occurs when. . . an employee's private

interest interferes in any way, or even appears to interfere, with the interests of the Company."

108.    In addition, under the Code, related to conflicts of interests, is a provision which

lists examples of potential conflicts of interest.

109.    One such conflict of interest listed under the Code is when "You or your family

member receives an improper personal benefit as a result of your position with the Company."

110.    In this provision of the Code, "family members" includes, among other things,

"siblings" and  "any person who lives in your household."

111.    Holland received an improper benefit of being promoted after his direct

supervisor, Warren, moved in with Holland's sister, Schumacher.

112.    The Plaintiff, at all times after Warren's hire and Holland's promotion remained

unemployed, despite reasonable best efforts to find employment.

113.    The Account Manager position previously held by the Plaintiff was not discontinued at the Russellville Plant.

114.    Upon information and belief, Holland has other relatives who work at the Plant, including Jason Young.

115.    The Plaintiff's termination of employment by the Defendant was wrongful, pretextual, discriminatory and retaliatory of which, as a result, the Plaintiff has suffered damages in an amount that exceeds the amount required for federal diversity jurisdiction.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

116.    Plaintiff incorporates all preceding paragraphs as if set forth in full herein word for word.

117.    This cause of action is filed pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e *et seq* regarding unlawful employment practices exercised by the Defendant of which the Plaintiff suffered.

118.    At all relevant times the Defendant employed more than fifteen employees.

119.    At all relevant times, the Defendant had continuously been an employer engaged in an industry affecting commerce within the meaning of Title VII.

120.    At all relevant times, the Defendant had a Code of Business Conduct ("Code") which states, "We take all reports of possible misconduct seriously, and all concerns will be handled quickly, discreetly and professionally.  [ABM] does not tolerate retaliation against anyone who raises a question or provides information in good faith about anything that may be a violation of the law, our code or one of our Company's other policies."

121.    In addition, the Defendant's Code provides: "ABM does not tolerate any form of

14

unlawful workplace discrimination, harassment, retaliation, bullying, threatening behavior or violence."

122.    Pursuant to the Code, "[ABM] has zero tolerance for retaliation. Any employee or manager who attempts to retaliate against an individual who has reported a violation or possible violation of this Code will face serious disciplinary action, up to and including termination."

123.    In addition, if an employee of the Defendant became "aware of any activity that is or may be in violation of our Code or any law or regulation applicable to our business, it is your responsibility to report such violation."

124.    Notably, under the Code, "a failure to report a violation is itself in violation of this Code."

125.    The Plaintiff made an internal complaint to the Defendant for violations of the Code that the Plaintiff observed while she was an employee of the Defendant.

126.    The filing of this internal complaint was protected activity under Title VII and applicable laws and regulations and was in compliance with the Defendant's Code.

127.    Plaintiff alleges that she suffered retaliation and harm because of her protected activity, in violation of 42 U.S.C. § 2000e-3(a).

128.    The retaliation suffered by the Plaintiff was the but for cause which led to an adverse employment outcome for the Plaintiff which was causally connected to Plaintiff's protected activity.

129.    As a result of this unlawful retaliation, Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages and benefits, diminished employment opportunity, humiliation, embarrassment, mental anguish and emotional and physical distress.

130.    As a direct and proximate result of the Defendant's unlawful retaliation, Plaintiff

is entitled to all remedies available for violations of the anti-retaliation provisions of Title VII, including an award of punitive damages and reasonable attorney's fees under 42 U.S.C. §2000e-5(k).

## COUNT II
## GENDER DISCRIMINATION UNDER TITLE VII

131.    Plaintiff incorporates all preceding paragraphs as if set forth herein, word for word.

132.    Gender is a protected class or group under Title VII.

133.    Plaintiff at all relevant times was a member of a protected class.

134.    During the Plaintiff's employment she met the employer Defendant's legitimate job expectations and was qualified to perform her job as Account Manager.

135.    After Holland, a white male, filed an internal complaint allegedly for harassment with the Defendant against the Plaintiff, the Plaintiff was instructed to stay away from the job site while the investigation was ongoing.

136.    The Plaintiff subsequently filed an internal complaint against Holland alleging harassment after receiving disparaging messages and threats from Holland.

137.    Upon information and belief, both the complaint filed by the Plaintiff against Holland and the complaint filed by Holland against the Plaintiff were for harassment, which therefore meant the complaints were of comparable seriousness.

138.    After the Plaintiff filed her internal complaint against Holland, Holland was not instructed to stay away from the job site while the investigation against him was ongoing, all while the Plaintiff was instructed to stay away from the job site.

139.    Upon information and belief, both Holland and the Plaintiff communicated with Eric Conrad regarding their internal complaints.

140.    Both the Plaintiff and Holland were subject to the Defendant's Code, which did not tolerate any form of workplace harassment or retaliation.

141.    During the course of these two investigations, the Plaintiff was treated differently and less favorably than Holland, and the Plaintiff was discriminated against on the basis of her sex.

142.    The Plaintiff's gender/sex was a motivating factor and/or sole reason to subject the Plaintiff to disparate discipline and any proffered reason for Plaintiff's discharge was mere pretext for intentional gender discrimination against the Plaintiff.

143.    The Defendant allowed inconsistent internal investigation procedures to apply to Holland and the Plaintiff after each had an internal investigation opened against them.

144.    As a direct and proximate result of this gender discrimination, the Plaintiff has suffered an adverse employment action which was causally connected to the Plaintiff filing her internal complaint against Holland.

145.    The Defendant has discriminated against the Plaintiff on the basis of her gender in violation of Title VII.

146.    The Defendant's conduct and improper treatment of the Plaintiff was intentional, deliberate, willful, malicious and conducted in callous disregard of the rights of the Plaintiff.

147.    The Defendant's policies, practices and procedures, or lack thereof, have produced a disparate impact on the Plaintiff with respect to the terms and conditions of her employment.

148.    As a result of Defendant's alleged conduct, the Plaintiff has suffered and continues to suffer harm including, but not limited to, lost wages and benefits, diminished employment opportunities, humiliation, embarrassment and emotional distress.

149.     By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available to her under Title VII, including an award of punitive damages. Reasonable attorney's fees should be awarded under 42 U.S.C. §2000e-5(k).

**COUNT III**
**VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT**

150.     Plaintiff incorporates all preceding paragraphs as if set forth herein, word for word.

151.     The Arkansas Civil Rights Act, 16-23-101 *et seq.* provides individuals the right to be free from discrimination because of race, religion, national origin or gender.

152.     The Arkansas Civil Rights Act ("ACRA") includes protection for an individual's right to obtain and hold employment without discrimination.

153.     Any person who is injured by an intentional act of discrimination in violation of the ACRA shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover compensatory damages and punitive damages, and, in the discretion of the court, to recover the costs of litigation and a reasonable attorney's fee.

154.     Section 108(a) of the ACRA provides: "A person shall not discriminate against any individual because the individual in good faith has opposed any act or practice made unlawful by this subchapter or because the individual in good faith made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter."

155.     The Plaintiff, in good faith, made a charge in an internal investigation which resulted in the Plaintiff being discriminated and retaliated against on the basis of gender.

156.     As a direct and proximate result of the Plaintiff's charge, the Plaintiff has suffered an adverse employment action which is causally connected to the protected activity the Plaintiff

engaged in.

157.    By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available to her under the Arkansas Civil Rights Act, including an award of punitive damages.

## JURY TRIAL

158.    Plaintiff requests a jury trial on all issues so triable.

## PUNITIVE DAMAGES

159.    In addition to compensatory damages for actual losses that the Plaintiff has suffered, the Plaintiff asks for punitive damage from the Defendant.

160.    Punitive damages should be imposed to punish the Defendant from intentionally retaliating and discriminating against the Plaintiff, and to deter others from similar conduct. In this case, punitive damages are appropriate because the Defendant knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in damage to the Plaintiff and that they continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred or, the Defendant intentionally pursued a course of conduct for the purpose of causing the Plaintiff damage, or they did both. In arriving at the amount of punitive damages, the financial condition of the Defendants should be considered.

## PRAYER FOR RELIEF

161.    The Plaintiff can establish damages that exceed the amount required for this court to have jurisdiction.

WHEREFORE, Plaintiff respectfully request that this Court enter an appropriate order that commands the Defendant to make the Plaintiff whole by providing appropriate relief in the form of back pay, with prejudgment interest in an amount to be determined at trial, and other

affirmative relief necessary to eradicate the Defendant's unlawful employment practices,

including potential reinstatement of the Plaintiff. In addition, the Plaintiff requests the Court to

award:  front pay, compensation for past and future pecuniary losses and non-pecuniary losses

including, but not limited to compensatory damages for humiliation, diminished employment

opportunity, embarrassment, mental anguish and emotional and reputational harm stemming

from the Plaintiff's wrongful termination, in amounts to be determined at trial, plus post-

judgment interest; and an award of punitive damages to be paid to the Plaintiff for Defendant's

intentional, malicious and reckless conduct, and for compensation for personal effects that the

Plaintiff has not been able to retrieve from the Plant and for an  award of Plaintiff's costs and

attorney's fees and for all other relief that this Court finds the Plaintiff so entitled.

Respectfully submitted,

Stacey Daniel, **PLAINTIFF**

Christopher J. Hooks ABA 2020190
Benjamin H. Shipley III ABA 80130
Jon P. Robinson ABA 91047
Robertson, Beasley, Shipley
& Robinson, PLLC
315 N. 7th Street
Fort Smith, AR 72901
479-782-8813
479-785-0254 (fax)
chooks@rbsr-attorneys.com
bshipley@ rbsr-attorneys.com
jrobinson@rbsr-attorneys.com

## VERIFICATION

State of Arkansas

County of ___Johnson___

    I, _Stacey Diane Daniel_ being duly sworn, says that I am the Plaintiff in the above-

captioned case and have authorized the filing of this Complaint. I have reviewed the allegations

made in the Complaint, and to those allegations of which I have personal knowledge, I believe

them, to the best of my knowledge to be true.

Executed this ___5th___ day of April, 2021.

                                                    _Stacey Diane Daniel_
                                                    Affiant

## ACKNOWLEDGMENT

STATE OF ARKANSAS         )
                                )SS

COUNTY OF___Johnson___    )

_April_ Subscribed and sworn before me, a Notary Public, this ___5___ day of

~~March~~, 2021.

My Commission Expires:                          _____

___11-26-2028___                                  Notary Public

MICHELLE FROST
NOTARY PUBLIC
JOHNSON CO., ARKANSAS



**Chris Holland**
Mobile

Ok so I just got a text from Andrea  saying she talked with you? I couldn't get ahold of you so I had talked with her an told her since she was running a 101.5 temp they had to get tested my sister was with me when I

EXHIBIT
A



Chris Holland
Mobile

my sister was with me when I got the text and when I talked with her...I got a hold of nick and told him I got ahold of Pearson and I told him I was going to call Apple he said not to worry about doing that since  it's not



since it's not confirmed.....However keep in mind my sister was with me and me being me worrying about doing the right thing got a hold of dan he prompted me to contact the Covid line for Entergy.....And



Entergy.....And there names have been put in registry.I was afraid of their names coming up through Entergy database from being tested for Covid at hospital

8/22/20 6:58 AM

So, did you

| Incident # 20-09116 | **Lamar Police Department** | Report Date 09/16/20 |
|---|---|---|
| Page 1 of 2 | Incident Report | Report Time 5:50 AM |

| Status | Exception Clearance | Date | Reporting Officer | ORI/Agency |
|---|---|---|---|---|
| Active | | Not Applicable | L1  Griggs, Gaston | AR0360300 |
| | Assigned Officer | | Entered By | Approving Officer |
| | | | GGriggs | |
| | Assisting Officers | | | |

## Complainant

| SSN/ID/TIN | Title | Name | DOB | Age | Sex | Resident Status |
|---|---|---|---|---|---|---|
| ▓▓▓▓▓▓ | Mrs | Daniel, Stacey Diane | ▓▓▓▓▓▓ | 42 | F | Resident |

| Race White | Ethnicity Not Hispanic/Latino | Home Phone | Work Phone | Other Phone (479)518-1058 | DL (#, ST) 920440856, AR |
|---|---|---|---|---|---|

| US Citizen Yes | Legal Alien | Doc Type | Immig Doc # | Nationality |
|---|---|---|---|---|

| Home Address ▓▓▓▓▓▓▓▓▓▓▓▓▓ | Employer Ano |
|---|---|

| Work Address ST,Russellville, AR 72801 | Occupation |
|---|---|

## Offenses

| Incident Location ▓▓▓▓▓▓▓▓▓▓▓▓ | Zone |
|---|---|

| Earliest Possible Date 09/16/2020 | Time 05:50 | Latest Possible Date 09/16/2020 | Time 05:50 |
|---|---|---|---|

| # | Statute/Code | Description | Fel/Misd | Att/Comp | Loc | Bias | Wpn | CATypes |
|---|---|---|---|---|---|---|---|---|
| 1 | 00-00-000 | OTHER - | | Completed | 20 | 88 | 99 | |

| MO | Method of Entry | # Prems |
|---|---|---|
| Subject filed an information in regards to a disgruntle employee driving passed her home and | n/a | 0 |

| Location Types | Bias Motivation Codes |
|---|---|
| 01 Air/Bus/Train Terminal<br>02 Bank/S&L<br>03 Bar/Night Club<br>04 Church/Synag/Temple<br>05 Commercial/Off Bldg<br>06 Construction Site<br>07 Convenience Store<br>08 Dept/Discount Store<br>09 Drug Str/Dr Off/Hosp<br>10 Field/Woods<br>11 Govt/Public Bldg<br>12 Grocery/Supermarket<br>13 Hway/Road/Alley<br>14 Hotel/Motel<br>15 Jail/Prison<br>16 Lake/Waterway<br>17 Liquor Store<br>18 Parking Lot/Garage<br>19 Rental Storage Facility<br>20 Residence/Home<br>21 Restaurant<br>23 Service/Gas Station<br>24 Specialty Store<br>25 Unknown/Other<br>37 Abandoned/Condemned Structure<br>38 Amusement Park<br>39 Arena/Stadium/Fair grounds/Coliseum<br>40 ATM Separate from Bank<br>41 Auto Dealership New/Used<br>42 Camp/Campground<br>44 Daycare Facility<br>45 Dock/Wharf/Freight/ Modal Terminal<br>46 Farm Facility<br>47 Gambling Facility/Casino/Race Track<br>48 Industrial Site<br>49 Military Installation<br>50 Park/Playground<br>51 Rest Area<br>52 School -<br>53 School - College/University<br>53 School - Elementary/Secondary<br>54 Shelter - Mission/Homeless<br>55 Shopping Mall<br>56 Tribal Lands<br>57 Community Center<br>58 Cyberspace | ANTI-<br>11 White<br>12 Black or African American<br>13 American Indian or Alaska Native<br>14 Asian<br>15 Multi-races, Group<br>16 Native Hawaiian or Other Pacific Islander<br>21 Jewish<br>22 Catholic<br>23 Protestant<br>24 Islamic (Muslim)<br>25 Other Religion<br>26 Multi-religious group<br>27 Atheist/Agnostic<br>31 Arab<br>32 Hispanic or Latino<br>33 Not Hispanic or Latino<br>41 Gay (male)<br>42 Lesbian<br>43 Lesbian, Gay, Bisexual, or Transgender, Mixed Group (LGBT)<br>44 Heterosexual<br>45 Bisexual<br>51 Phys Disability<br>52 Mental Disability<br>61 Male<br>62 Female<br>71 Transgender<br>72 Gender Non-Conforming<br>88 None<br>99 Unknown |

| Suspected Of Using | Criminal Activity Types | Weapon Type(s) |
|---|---|---|
| None | B Buying/Receiving<br>P Possessing/Concealing<br>D Distributing/Selling<br>E Exploiting Children<br>A Simple/Gross Neglect<br>F Organized Abuse<br>C Cultivating/Manuf/Publishing<br>O Operating/Promoting/Assisting<br>T Transport/Import/Transmit<br>U Using/Consuming<br>I Intentional Abuse & Torment<br>S Sexual Animal Abuse | 11 Firearm (Auto)<br>12 Handgun (Auto)<br>13 Rifle (Auto)<br>14 Shotgun (Auto)<br>15 Other Firearm<br>20 Knife/Cutting Instr<br>30 Blunt Object<br>35 Motor Vehicle<br>40 Personal Weapons<br>50 Poison<br>60 Explosives<br>65 Fire/Incendiary Device<br>70 Drugs/Narc./Sleeping Pills<br>85 Asphyxiation<br>90 Other<br>95 Unknown<br>99 None |

EXHIBIT

β

*Copyright Relativity Inc.© - RPS(Relativity Public Safety)*

Printed : 2/18/2021 3:39:42 PM

| Incident #   20-09116 | **Lamar Police Department** | Report Date   09/16/20 |
|---|---|---|
| Page   2 of 2 | Incident Report | Report Time   5:50 AM |

| Victim #1 | ☑ Is Complainant | | Event #s Related | 1 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

| SSN/ID/TIN | Title | Name | | | | DOB | Age | Sex | Resident Status |
|---|---|---|---|---|---|---|---|---|---|
| ▬▬▬ | **Mrs** | **Daniel, Stacey Diane** | | | | 02/24/1978 | 42 | F | Resident |

| Race   White | Ethnicity   Not Hispanic/Latino | Home Phone | Work Phone | Other Phone   (479)518-1058 | DL (#, ST)   920440856, AR |
|---|---|---|---|---|---|

| US Citizen   Yes | Legal Alien | Doc Type | Immig Doc # | Nationality |
|---|---|---|---|---|

| Home Address   ▬▬▬▬▬▬ | Employer   Ano |
|---|---|

| Work Address   ST,Russellville, AR 72801 | Occupation |
|---|---|

| Victim Type   Individual | Injury Type   None, | Aggravated Assault/Homicide Circumstances   None | Relationship To Suspect   #1 N/A |
|---|---|---|---|

| Justifiable Homicide Circumstances   None | Taken to: (Hospital Name) |
|---|---|

| Injury Description |
|---|

| Suspect #1 |
|---|

| SSN/ID/TIN | Title | Name | | | | DOB | Age | Sex | Resident Status |
|---|---|---|---|---|---|---|---|---|---|
| | **Mr** | **Christopher, Holland** | | | | | | U | Unknown |

| Race   Unknown | Ethnicity   Unknown | Home Phone | Work Phone | Other Phone | DL (#, ST) |
|---|---|---|---|---|---|

| US Citizen   Yes | Legal Alien | Doc Type | Immig Doc # | Nationality |
|---|---|---|---|---|

| Home Address | Employer |
|---|---|

| Work Address | Occupation |
|---|---|

| Height   - | Weight   - | Eyes | Build | AKA |
|---|---|---|---|---|

| Narrative & Statements |
|---|

**Narrative - Griggs, Gaston - 9/16/2020 10:50:00 AM (Initial)**

On 09/16/20 a subject, Stacey Daniel, made contact with me at the Lamar Police Department in regards to an employee driving by her residence in Lamar and harassing her. Prior to coming to the office, she had stated to me over the phone that a subject by the name Christopher Hollon had been seen by her husband driving on McGuire Road passed her house as well as he had called and hung up when she answered it and sent her a text. I advised Mrs. Daniel she needed to provide a written and signed statement on the information she wanted to file a report on. When she arrived at the Police Department, she filled out a statement that stated on the morning of 09/17/20 at 12:47 AM she received a text message from a disgruntle employee telling her to stop telling employees lies and other things and threatening her with slander as well as asking he if she knew what that was. She then stated that on 08/22/20 there was a work issue with an employee, Christopher Hollon and she had given him a coaching on sharing private medical information on employee with his family and friends. She stated that he was yelling at her and hung up. She then stated at that point she was informed on 08/30/20 by her direct supervisor that she wasn't to contact him or anything until they investigated things and got back with her. She stated she had done what was asked and also Chris Hollon has been seen driving by her home at different times in the morning and later afternoon. Mrs. Daniel advised that she only wanted to file the report for information and record purposes only. She advised that she did not want Lamar Police Department to proceed with any further action and she did not at this point want to file for charges on any part if the reported information. A copy of the text sent is attached to the report. No further actions have been taken.