IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

STACEY DANIEL                                                                                              PLAINTIFF

vs.                                         Case No. 4:21-cv-269-KGB

ABM INDUSTRIES INCORPORATED                                                              DEFENDANT

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendant ABM Industries Incorporated has a valid and enforceable Mutual Arbitration Agreement ("Agreement") with Plaintiff Stacey Daniel, and her claims should be compelled to arbitration. Under well-established FAA case law, any doubts should be resolved in favor of arbitration. And Plaintiff's arguments opposing arbitration are—at best—"doubts." Electronic signatures are valid and enforceable under Arkansas law, and Plaintiff has not come close to meeting the high burden necessary to show a forgery. She offers nothing more than self-serving denials and the testimony of a disgruntled former employee who lacks any firsthand knowledge of Ms. Daniel's employment whatsoever. Her specious arguments should be summarily rejected.

I.   **ANY DOUBTS REGARDING ARBITRATION SHOULD BE RESOLVED IN FAVOR OF ARBITRATION.**

The Eighth Circuit has made clear that when a factual dispute exists, the district court should err in favor of compelling arbitration:

> The Arbitration Act establishes that, as a matter of federal law, ***any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration***, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Bank of America, N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25) (emphasis added); *see also Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 845 (8th Cir. 2012) ("There is strong policy favoring arbitration, and doubts

are resolved in favor of arbitration." (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 638–39 (1985)).

Plaintiff's arguments raise—at best—doubts. Whether Plaintiff previously worked at a law firm or previously refused to sign an arbitration agreement for a different employer makes no difference here. What Plaintiff did with new hires during their onboarding process several months into her employment is immaterial to her own onboarding process. Plaintiff has made a ***very*** serious allegation, accusing someone at ABM of forging her name to ***all*** of her onboarding materials. To be clear, she alleges someone forged her signature on at least ***nineteen*** different documents, including critical documents of legal significance like her I-9 and W-4. Not only is forgery a criminal offense in Arkansas, but several of the documents were signed under penalty of perjury under federal law. Many of the documents contain highly personal information that only Plaintiff herself could have provided, including her husband's name and phone number, her bank account number, and her drivers' license number. Her I-9 includes two other last names she had previously used to which no one at ABM would have had access.

She asks the Court to assume that either Nick Tudor or some unknown person at ABM violated company policy—thereby risking his or her own job—by secretly signing all of her onboarding documents for her. And to what end? So Plaintiff could be gainfully employed? Not only is this illogical, but there is no evidence to support it. Ms. Daniel's contentions are fabrications.

Effectively, all Plaintiff offers are her self-serving denials: She claims she never saw the Agreement, she never signed the Agreement, and she never signed ***any*** of her onboarding documents. The difficulty with Plaintiff's assertions is that she admits receiving the onboarding documents and she admits to filling them out, just by hand rather than electronically. *See* Doc. 13-3, ¶¶ 47-50. Ms. Daniel conveniently fails to list all of the documents she recalls signing. *Id.*, ¶

47 (stating she filled out by hand "onboarding documents *including* a job application, direct deposit form and tax documentation") (emphasis added).  Her claim she never saw the Agreement is also dubious.  The long form Agreement was accessible—in no less than fourteen languages—on ABM's portal.  And by Plaintiff's own admissions in her sworn affidavit, she helped onboard other candidates—which would provide her access to and notice of the Agreement and all the other onboarding documents.  *See* Doc. 13-3, ¶¶ 21-23.

Ms. Daniel also nefariously twists the testimony of Joseph Selby in her response.  Whether Plaintiff actually *reviewed* the Agreement (which she had every opportunity to do) was her choice.  The point of Mr. Selby's testimony is that ABM's onboarding process provides candidates the opportunity to review these documents.  It is up to the candidate to choose to exercise that option.  *Cf. Irasena v. Chalak M&M AR1 LLC*, 4:15CV00038 JLH, 2015 WL 4498227, at *5 (E.D. Ark. July 23, 2015) ("An employee's only briefly looking at an agreement and failing to read or understand it does not render the agreement unconscionable.").  Contrary to Plaintiff's arguments, ABM—or any other employer, for that matter—has no way to *compel* a candidate to read or review anything.

Plaintiff's arguments about whether she signed an "acknowledgement" or an "agreement" are equally meaningless.  Numerous courts have held that acknowledgements are binding, and it is acceptable for them to be separate from the underlying agreement.  *See, e.g., Tharpe v. Securitas Sec. Servs. USA*, No. 20-13267 (KM) (ESK), 2021 U.S. Dist. LEXIS 34275, at *7 (D.N.J. Feb. 24, 2021) ("No particular form of words is necessary to accomplish a clear and unambiguous waiver.  Likewise, the signed waiver can be accomplished by an acknowledgement form that is separate from the underlying agreement.") (citation and internal quotations omitted).  Likewise, Plaintiff's criticisms of the generic concept of electronic signatures on employment documents ignore the realities of the modern workplace.  Electronic signatures are valid under Arkansas law, and courts

routinely uphold "clickwrap agreements" and other electronic contracts where applicants and employees are able "to automatically affix their signature." *See Holley*, 416 F. Supp. 3d at 821-22.

As much as Plaintiff tries to avoid her contractual duty to obligate, her testimony leaves—at best—doubts, which should be resolved in favor of arbitration. *See O'Neal v. Regions Bank*, No. 4:10-cv-04061, 2010 U.S. Dist. LEXIS 138230, at *7 (W.D. Ark. Dec. 6, 2010) ("[I]n light of this factual dispute regarding whether Ms. O'Neal's signature was a forgery, this Court must err on the side of compelling arbitration.").[1]

## II. PLAINTIFF HAS NOT MET THE BURDEN OF SHOWING A FORGERY.

Under longstanding Arkansas law, signing a contract evidences the person's knowledge of the contract. *Carmichael v. Nationwide Life Ins. Co.*, 810 S.W.2d 39, 41 (1991). Arkansas law presumes that a signed contract was entered into voluntarily. *Bank of the Ozarks, Inc. v. Walker*, 434 S.W.3d 357. Just as this Court determined in *Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 818 (E.D. Ark. 2019), that the plaintiff failed to create a disputed genuine issue of material fact, Plaintiff has failed to do so here.

*Holley* presents a very similar fact pattern.[2] The employer presented evidence of an electronically signed arbitration agreement, which the plaintiff flatly denied ever signing. "Under

---

[1] The Court is also free to disregard Plaintiff's bare denials in the face of proof of security measures surrounding an electronic signature process that indicate otherwise. *See, e.g., Perry v. Ad Astra Recovery Servs.*, No. 4:14CV4 TIA, 2014 U.S. Dist. LEXIS 82808, at *8 (E.D. Mo. June 18, 2014).

[2] Contrary to Plaintiff's assertion, *Shockley v. PrimeLending*, 929 F.3d 1012 (8th Cir. 2019), is inapposite. There, the arbitration provision was buried in a handbook. Merely clicking on the handbook document generated an ***automatic*** acknowledgement of the handbook, which gave no hint that arbitration was at issue. The court found no contract to arbitrate had been formed. Plus, there was no allegation of a forgery in that case. Just as this Court distinguished *Shockley* in *Holley*, it should be distinguished here.

Arkansas law, the party asserting forgery of a signature carries the burden of proof to establish the falsity of the signature." *Id.* at 818.  As in *Holley*, Plaintiff has not carried this burden.[3]

Plaintiff offers only that "someone other than me" signed the document.  She asks the Court to assume this person was Charles "Nick" Tudor, Operations Manager, because, incredibly and in violation of ABM policy, she claims he asked her to disclose her unique log-in credentials to him and he allegedly wrote them down.  Even if this outlandish allegation was true (which Mr. Tudor will unquestionably testify it is not), it is a far leap for Ms. Daniel to now say Mr. Tudor then used Plaintiff's credentials to forge *all* of her onboarding documents.  Plus, Mr. Tudor has already adamantly denied that he ever signed any hiring documents for any other person.  Doc. 10-2, ¶ 14.

Plaintiff's arguments are nothing more than a disingenuous attempt to create a material fact in an attempt to avoid arbitration, but she has failed to meet her burden to show a forgery under Arkansas law.  Her allegations are without merit, misrepresent the evidence offered in ABM's opening brief, and encourage this Court to ignore Arkansas law and its prior decision in the *Holley* case.

### III.  THE AFFIDAVIT OF JODY CRUTCHER IS IRRELEVANT AND SHOULD BE DISREGARDED.

Jody Crutcher is nothing more than a disgruntled former employee with her own beef against ABM.  Her affidavit demonstrates she has no firsthand knowledge of anything connected with Plaintiff's hiring and onboarding at the facility in Arkansas, let alone whether Plaintiff electronically signed the Agreement or not.  Crutcher did not work for ABM in Arkansas, and she offers no testimony showing she even knew Plaintiff at the time of her hiring—she became Plaintiff's manager five months after her hire.  *See* Doc. 13-2, ¶ 12.  She makes only generic

---

[3] Plaintiff's arguments also confuse whose burden is at issue here.  She claims the burden is ABM's to prove an enforceable agreement, but ABM has met that burden.  Plaintiff has raised the issue of forgery, and that burden falls to her.

statements about other unidentified onboarding managers, other unnamed new hires and candidates, and other purported "problems with the onboarding process," none of which demonstrates that Plaintiff's Agreement was forged.

This Court should not permit Ms. Crutcher to display her hostility with her former employer in this senseless fashion.

## IV.   CONCLUSION

Accordingly, the Court should grant ABM's Motion to Dismiss and Compel Arbitration. Plaintiff entered into a valid and enforceable arbitration agreement, as evidenced by her electronic signature on the Agreement. She has failed to offer any evidence of a forgery, let alone adequate evidence, and doubts should be resolved in favor of compelling arbitration.

    Eva C. Madison (98183)
    Maggie Benson (2015077)
    Littler Mendelson, P.C.
    217 E. Dickson Street, Suite 204
    Fayetteville, Arkansas 72701
    Telephone: 479-582-6100
    Fax:  479-582-6111
    emadison@littler.com
    mbenson@littler.com

    Attorneys for ABM Industries Incorporated

4837-7887-7424.3 / 098804-1004